**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIAWAN BRITTON,          )
                                 )
     Plaintiff,          )
                                 )     CIVIL ACTION
vs.                       )
                                 )     FILE No. 1:19-cv-05386-AT
HT RETAIL, LLC,         )
                                 )
     Defendant.       )

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Tiawan Britton ("Plaintiff") and HT Retail, LLC ("Defendant")(Plaintiff and Defendant shall be collectively referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on November 26, 2019, Plaintiff asserted claims for injunctive relief against Defendant, based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief with regard to a parcel of real property located at 841 Oak Street,

1

S.W., Atlanta, Georgia 30310, Fulton County Property Appraiser's parcel number 14 0108 LL0185 (The two separate, contiguous structures and improvements situated upon said real property shall be referenced herein as the "East Facility" and "West Facility" (together, the "Facilities"), and said parcel of real property shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  **Attorney's Fees and Costs**

    1.1    The Parties shall execute this Agreement and Plaintiff's Counsel, The Law Office of Craig J. Ehrlich, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice ("Joint Stipulation") to be distributed to all Parties for execution. Defendant agrees to pay to Plaintiff's Counsel, within

fourteen (14) days of the entry by the Court of the Order Approving Consent Decree and Dismissal of Defendant with Prejudice (the "Order"), attorney's fees and costs of litigation in the amount of $4,350.00 (Four Thousand Three Hundred Fifty Dollars and No Cents). This amount is deemed to include a $300.00 (three hundred dollar) re-inspection fee to Plaintiff. Said payment shall be made payable to "The Law Office of Craig J. Ehrlich, LLC IOLTA" and delivered to The Law Office of Craig J. Ehrlich, LLC, 1123 Zonolite Road, N.E., Suite 7-B, Atlanta, Georgia 30306.

1.2    Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3    Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

1.4    Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result

3

of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

1.5    The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

## 2.    <u>Alterations or Modifications to the Facilities and Property</u>

2.1    The Parties hereto acknowledge and stipulate that Defendant shall modify or alter the items expressly identified by and in the manner specified in "Exhibit 1." The repairs or modifications identified in "Exhibit 1" shall be completed in all respects no later than twenty-four (24) months from the entry of the Order.  The time period for completion by Defendant shall be extended on account of acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain or delays in issuance of building or zoning permits, failure or delays of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of any of such unforeseen circumstances, the time period for completion of the alterations or modifications in "Exhibit 1" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant

provides notice to Plaintiff's Counsel prior to the original completion date set forth above.

2.2    Upon completion of the alterations and modifications set forth in "Exhibit 1," Defendant shall provide written notice by certified or registered mail, or via electronic mail, to Plaintiff's Counsel.

2.3    If the modifications or alterations described in "Exhibit 1" conflict with Georgia law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendant shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist.  If any such alternative solution is applied by Defendant, Defendant agrees to notify Plaintiff's Counsel of the same.

2.4    The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in "Exhibit 1," or after the elapse of the twenty-four (24) month time period set forth in Paragraph 2.1, above, whichever is sooner, Plaintiff may inspect the Facilities and Property to ensure that Defendant has completed the modifications or alterations described in "Exhibit 1." Defendant shall provide Plaintiff or his designated representative reasonable access

to the Facilities and Property to verify completion of the work described in "Exhibit 1."

2.5     If an inspection contemplated herein reveals that any of the alterations or modifications described in "Exhibit 1" have been performed in a manner that does not substantially comply with the corrective action plans set forth in "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Paragraph 3, below.

2.6     Upon all of the necessary modifications being completed as set forth in "Exhibit 1," the Facilities and Property shall be deemed fully compliant with the ADA and 2010 ADAAG pursuant to the readily achievable and other applicable standards.

## 3.    <u>**Enforcement Provisions**</u>

If Plaintiff contends that an inspection performed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in "Exhibit 1" have been performed in a manner that does not substantially comply with "Exhibit 1," Plaintiff shall provide notice to Defendant via certified mail at the address listed in Paragraph 6.1, below. Defendant shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliance with "Exhibit 1." If Defendant does not cure the alleged non-compliant alterations or

modifications, Plaintiff shall have the right to move this Court to enforce this agreement, subject to any and all Defendant's defenses.

4.   **Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in paragraph 5.1 below). Defendant expressly denies any such liability, wrongdoing, or responsibility.

5.   **Release Given By Plaintiff in Favor of Defendant**

5.1   In exchange for the good and valuable consideration set forth herein, Plaintiff and his respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendant, its agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, and all current and former tenants or lessees of the Facilities and/or Property (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or

7

causes of action arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facilities and/or Property. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

5.2    As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

6.    **Notice**

   6.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

   **To Plaintiff:**

   The Law Office of Craig J. Ehrlich, LLC
   1123 Zonolite Road, N.E. Suite 7-B
   Atlanta, Georgia 30306
   Fax: (855) 415-2480
   craig@ehrlichlawoffice.com

   **To Defendant:**

   David F. Cooper, Esq.
   Kitchens Kelley Gaynes PC
   Glenridge Highlands One, Suite 800
   5555 Glenridge Connector
   Atlanta, Georgia 30342
   Fax: (404) 364-0126
   DCooper@kkgpc.com

   6.2    Any Party may change such address for the purpose of this paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

7.    **Free Will**

   The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal

significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

8.  **Miscellaneous Terms and Conditions**

8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3    This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors,

attorneys, officers, families, heirs, spouses, and employees.

8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than this Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8    The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in

carrying out the provisions and purposes of this Agreement.

8.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10    The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11    This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the state of Georgia.

[signatures appear on the following page]

IN WITNESS WHEREOF, the Parties have executed this agreement as of the

date(s) set forth below:

**"PLAINTIFF"**

_____

Tiawan Britton

Date 02-05-2020 _____

**"DEFENDANT"**

_____

HT Retail, LLC

By: _____(Print Name)

As its:  CEO of Manager            (Title)

Date   2.6.20 _____

13

**EXHIBIT 1**

# Work Product - Expert Report

A report covering the Americans with Disability Act (ADA)
alleged violations in the Complaint:

Tiawan Britton Vs. Ht Retail, LLC

At:
841 Oak Street, Atlanta GA 30310



By:
Peter Combs, Architect

Inspection date:
January 22, 2020  & Feburary 3, 2020

# COMBS

## & ASSOCIATES
**Architect Expert Witness**
PO Box 706
Leesburg, AL 35983
404-790-1140

## The relevant documents

In this response to the Plaintiff's Complaint I will refer to the following documents:

ADA -91--- The 1991 standards of The Americans with Disability Act became mandatory on January 1, 1991 The mandatory standards were revised and updated in 2010 and that edition became mandatory on March 15, 2012

ADA -10--- The 2010 standards of Americans with Disability Act became mandatory on March 15, 2012. All facilities that meet the 1991 Standards have "Safe Harbor" from the 2010 Standards. All renovations, new construction and readily achievable barrier removal, not already performed under the 1991 standards must comply with 2010 standards.

## The alleged violations in the complaint are listed below:

**Complaints Numbered a: There is no accessible route from the Public sidewalk**



Eliminate these ADA spaces

This complaint has no basis. As shown above there are no sidewalks that lead into the site. The public sidewalk does not have a pedestrian connection into the site. The site only has vehicular entrances.

**ADA- *206.2.1 EXCEPTION 2.** An accessible route shall not be required between site arrival points and the building or facility entrance if the only means of access between them is a vehicular way not providing pedestrian access.*

**Complaint Number b: At the center of the East Facility the parking spaces are missing the required ADA parking signs.**

This complaint has no basis. The picture below shows that there are two parking spaces and two signs.



**Complaint number c: These East Facility spaces do not have an access aisle.**

An access aisle needs to be added. See below for requirements

## ADA requirements: accessible parking spaces & access aisles



Each space must have a sign that is visible with the bottom a minimum 60" above grade. The van space sign must indicate that it is a "Van" Space

Exception: If the access aisle is 96" wide then the van space can be 96" wide.

Curb ramps CANNOT intrude into access aisle.

The slope in any direction must not exceed 1" rise in a 48" horizontal run

Access aisle must be marked as a no parking zone.

Min. 132" Van space

60" Min.

Min. 96"

**Advisory 502.3.4 Location.** Wheelchair lifts typically are installed on the passenger side of vans. Many drivers, especially those who operate vans, find it more difficult to back into parking spaces than to back out into comparatively unrestricted vehicular lanes. For this reason, where a van and car share an access aisle, consider locating the van space so that the access aisle is on the passenger side of the van space.

This site has 89 total parking spaces. For this number the ADA requires that there be at least 3 standard ADA spaces and 1 "VAN" space.

**Complaint Number d: The above pictured parking area does not have an accessible way to get to the building entrances.**

There is no curb ramp and a wheelchair cannot get between the wheel stops. An access aisle needs to be added with an accessible route to the stores.



Create two new ADA spaces here with an access aisle in the middle as shown in the explanation above.

Thhe existion spaces have too mych slope.  1:48 is allowed and these have 1 ¾:48. Below is an example of how this is often solved in other locations.



These slopes are not on an accessible route and can be steeper than the 1:12 required for ADA

If this is built up to the sidewalk level, then a curb ramp is not necessary. If it is not built up to the sidewalk level then a curb ramp will be required. An example is shown be low.



**Complaint Number e: The ADA parking on the West end of the East facility does not have the required signs.**

The signs need to be added with the bottom edge at least 60" from the pavement.

**Complaints Numbered f & g: The parking and access aisle have too much slope.**

The maximum slope allowed is 1:48. That means that, 1 inch is the maximum vertical rise allowed in a horizontal run of 48 inches. In the picture




The orange level is 48" long and the blocks are cut to show inches.

**Complaint Number h:The parking is not on the shortest possible route.**

This complaint has no basis. Accessible parking is required to be distributed around a shopping center. These 2 parking spaces are on a short route to the stores at this end of the building. The other ADA spaces are on a short route to a different set of stores.

**Complaint Number i:The accessible parking on the East end of the West building do not have signs.**

Signs need to be added.

Everything on this page concerns the ADA spaces inbetween the buildings that should be eliminated (painted over).

**Complaints numbered j: The ADA parking has slopes greater than 1:48.**

These 4 sloping spaces at the ends of the buildings could be eliminated because only 3 standard ADA spaces and 1 VAN space are required. I suggest making 2 spaces in front of each building. Center the spaces on the building and have 1 VAN space at each location.

**Complaint Numbered k: The side flares of the curb ramp are too steep.**

The maximum slope for side flares is 1:10 and the existing ramp has 3 ½:10. If the parking at the end of the buildings is eliminated this ramp will no longer be on an accessible route and thus can remain unchanged.

**Complaint Numbered l: The two ADA spaces on the South side or front side of the West building have no signs.**

They need to be added. Yes as explained above each ADA spaces needs a sign.

**Complaint Numbered m & n: The two spaces mentioned above have too much slope.**




Here the existing slope is 3 3/8:48. Greater than the 1:48 allowed, but it would be possible to build up the surface to achieve the 1:48 allowed as shown in the picture below.



These slopes do not have to meet the ADA requirement of 1:12 slope because they are not on the accessible route to the store

**Complaint Numbered o: In the picture below the curb ramp is in the access aisle.**



An access aisle must have 5 feet of clear level pavement so a curb ramp cannot extend into this 5 foot zone.

## Requirements for curb ramps



A 1:12 means that the ramp can only rise one inch vertical in a 12" horizontal run. Side flares can be eliminated if the ramp has side curbs or handrails. If curbs are used there must be a non-walking area on the other side of the curb.



I believe the best way to do the curb ramp would be the same as shown for the other spaces talked about above.

It would also be possible to do it as two ramps going in two different direction as shown below.



**Complaint Numbered p: The side flares of the existing curb ramp are steeper than the 1:10 slope allowed.**

When reworking the accessible parking, be sure the any curb ramps meet the standards explained above.

Respectfully submitted by,

Peter A. Combs, RA